DECHERT LLP
Dennis H. Hranitzky
(dennis.hranitzky@dechert.com)
Eric C. Kirsch
(eric.kirsch@dechert.com)
1095 Avenue of the Americas
New York, New York 10036
(212) 698-3500
*Attorneys for Plaintiffs Themis Capital*
*and Des Moines Investments Ltd.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x

|  |  |  |
|---|---|---|
| THEMIS CAPITAL and | : | |
| DES MOINES INVESTMENTS LTD., | : | No. 09 Civ. 1652 (GBD) |
| | : | |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| DEMOCRATIC REPUBLIC OF CONGO | : | |
| and CENTRAL BANK OF THE | : | |
| DEMOCRATIC REPUBLIC OF THE | : | |
| CONGO, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT
OR, IN THE ALTERNATIVE, DEFAULT JUDGMENT**

13668746

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................2

I.      Defendants Have Failed To Pay Debts
        Owed To Plaintiffs..........................................................................................2

II.     Procedural History...........................................................................................5

ARGUMENT ...........................................................................................................6

I.      Plaintiffs Are Entitled To Summary Judgment ..............................................6

        A.      The Summary Judgment Standard..........................................................6

        B.      Defendants Have Failed To Satisfy Their Obligations Under The
                Credit Agreement, And Plaintiffs Are Entitled To Summary Judgment.................7

II.     Defendants Have Defaulted By Failing To Plead or Defend,
        And Plaintiffs Are Entitled To A Default Judgment. .......................................8

CONCLUSION ........................................................................................................10

## TABLE OF AUTHORITIES

**Page**

### CASES

*Commercial Bank of Kuwait v. Rafidain Bank,*
    15 F.3d 238 (2d Cir. 1994) .......................................................................... 9, 10

*Harlen Assocs. v. Inc. Village of Mineola,*
    273 F.3d 494 (2d Cir. 2001) ............................................................................... 6

*Mastec Latin America v. Inepar S/A Industrias E Construcoes,*
    No. 03 CIV 9892 (GBD), 2004 WL 1574732 (S.D.N.Y. July 13, 2004) ........................... 9

*Omni Quartz, Ltd. v. CVS Corp.,*
    287 F.3d 61 (2d Cir. 2002) ................................................................................. 7

*Rexnord Holdings, Inc. v. Bidermann,*
    21 F.3d 522 (2d Cir. 1994) ................................................................................. 7

*Roe v. City of Waterbury,*
    542 F.3d 31 (2d Cir. 2008) ................................................................................. 6

*Taylor Bldg. Mgmt., Inc. v. Global Payments Direct, Inc.,*
    19 Misc.3d 1133(A), 2008 WL 2067096 (N.Y. Sup. Ct. Mar. 20, 2008) ......................... 7

### STATUTES

28 U.S.C. § 1605 ........................................................................................... 8

28 U.S.C. § 1608 ..................................................................................... 5, 6, 9

Fed. R. Civ. P. 55............................................................................................ 8, 9

Fed. R. Civ. P. 56............................................................................................ 6

N.Y. Gen. Oblig. L. § 17-103 ............................................................................ 5, 8

### OTHER

H.R. Rep. No. 94-1487, *reprinted in* 1976 U.S.C.C.A.N. at 6604 ............................. 9, 10

Plaintiffs Themis Capital ("Themis") and Des Moines Investments, Ltd. ("Des Moines," and together with Themis, "Plaintiffs") by and through their attorneys, Dechert LLP, respectfully submit this Memorandum of Law in support of their motion pursuant to Federal Rules of Civil Procedure 55 and 56, Local Rules 55.2 and 56.1, and 28 U.S.C. section 1608(e) for summary judgment or, in the alternative, for default judgment against defendants the Democratic Republic of Congo (the "DRC") and the Central Bank of the Democratic Republic of Congo (the "Central Bank," and together with the DRC, "Defendants").

## PRELIMINARY STATEMENT

This action arises out of Defendants' unsatisfied obligations to pay Plaintiffs over $75 million in principal and interest owed under a debt restructuring agreement.  Plaintiffs are entitled to summary judgment because, as the incontrovertible evidence adduced in support of their motion demonstrates:

- Defendants owed these amounts to Plaintiffs' predecessors-in-interest and failed to pay them as required under the agreement;

- Plaintiffs are the holders, by assignment, of all rights, title, interest, benefits, and obligations under the agreement with respect to these amounts;

- Defendants, although foreign sovereign entities protected under the Foreign Sovereign Immunities Act ("FSIA"), are subject to suit in this action as a result of their waiver of sovereign immunity and consent to this Court's jurisdiction set forth in the agreement; and

- Defendants were served with the summons and complaint in full compliance with the special requirements for service on a sovereign set forth in the FSIA.

In the alternative, Defendants' failure to answer or move to dismiss the complaint in this

action entitles Plaintiffs to a default judgment.  To obtain a default judgment against a foreign sovereign, a plaintiff must obtain a certificate of default and then seek a default judgment from the Court, establishing its claims by evidence satisfactory to the Court.   Plaintiffs are entitled to a default judgment because they obtained a certificate of default on February 1, 2010, and have established their claims through the same incontrovertible evidence that establishes their entitlement to summary judgment.

## STATEMENT OF FACTS

### I.   Defendants Have Failed To Pay Debts Owed To Plaintiffs.

Plaintiffs are the assignees of all rights, title, interest, benefits, and obligations in certain debts owed by the Defendants under a Refinancing Credit Agreement, dated as of March 31, 1980, among the DRC, the Central Bank, certain bank creditors of the DRC, certain agents, and the Bank of Tokyo Trust Company as Servicing Bank (the "Credit Agreement," attached as Exhibit A to the Declaration of Eric C. Kirsch, dated February 1, 2010 (the "Kirsch Decl.")).[1] The Credit Agreement restructured a variety of debts owed to the DRC's bank creditors, each of which was listed in a Credit Information Schedule annexed to the Credit Agreement (the "Schedules"). Credit Agreement at R-1-R-2.

Themis's interests under the Credit Agreement consist of the right to receive $9,562,500.00 in principal (together with corresponding interest) originally owed to Citibank N.A. under Schedule A-7, and the right to receive $459,999.67 in principal (together with corresponding interest) originally owed to Bayerische Vereinsbank International S.A. under

---

[1]   At the time the Credit Agreement was executed, the Democratic Republic of Congo was known as the Republic of Zaire, and the Central Bank was known as the Bank of Zaire.  Bank of Tokyo Trust Company later was replaced as Servicing Bank by Union Bank of California, N.A., now known as Union Bank, N.A.

Schedule A-16.  Kirsch Decl. Exs. B and C.  Des Moines's interests consist of the right to receive:

- $487,900.00 in principal (together with corresponding interest) originally owed to Citibank N.A. under Schedule A-1;

- $308,463.08 in principal (together with corresponding interest) originally owed to Banque Bruxelles-Lambert S.A. under Schedule A-2;

- $483,125.00 in principal (together with corresponding interest) originally owed to Electro Banque under Schedules A-14(A) & (B);

- $1,449,375.00 in principal (together with corresponding interest) originally owed to Citibank N.A. under Schedule A-14(A);

- $254,472.50 in principal (together with corresponding interest) originally owed to Banque Bruxelles-Lambert S.A. under Schedule A-19;

- $308,451.77 in principal (together with corresponding interest) originally owed to Banque Bruxelles-Lambert S.A. under Schedule A-21; and

- $4,689,271.00 in principal (together with corresponding interest) originally owed to Citibank N.A. under Schedule A-26.

Kirsch Decl. Exs. D-H.  In aggregate, Themis is owed $7,981,058.35 in principal, and Des Moines is owed $10,022,499.97 in principal under the Credit Agreement.  Kirsch Decl. Exs. B-H. Both Themis and Des Moines are also owed interest corresponding to these amounts.  Credit Agreement §§ 3.02-3.08

The DRC was obligated to repay the principal and accrued interest periodically on specified payment dates – the last of which was April 2, 1990.  Credit Agreement §§ 2.01, 3.02-3.05, 4.01 and 5.02(c).  The DRC is also obligated to pay interest on any overdue amounts and

any out-of-pocket expenses incurred in an effort to collect outstanding amounts. Credit Agreement §§ 3.05(d) and 12.05(a)(iv) (providing for payment of "all out-of-pocket expenses (including, without limitation, all counsel fees and court costs, stamp taxes, duties and fees) incurred in connection with investigating any Event of Default or enforcing [the Credit Agreement] or suing for or collecting any overdue amount"). However, the DRC has not made any interest payments since April 2, 1990, and it has never paid any portion of the principal that Plaintiffs have been assigned. Kirsch Decl. Exs. I and J. A spreadsheet setting forth the amounts of principal and interest owed to Plaintiffs under the Credit Agreement is attached as Exhibit K to the Kirsch Declaration.

The Central Bank also is liable to Plaintiffs for the DRC's debts under the Credit Agreement. The Central Bank was "irrevocably and unconditionally instruct[ed]," for the benefit of the DRC's creditors, to make all principal and interest payments due under the Credit Agreement. Credit Agreement § 8.03. The Central Bank's obligation to pay any amounts owed by the DRC under the Credit Agreement is conditioned only on the availability of foreign currency with which to make the payments, and the DRC's failure to pay those amounts itself. Credit Agreement § 9.01(c). According to its own Annual Report, as of December 31, 2006, the Central Bank held foreign currency reserves worth over 78 billion Congolese Francs – or approximately $182.5 million at the then-current exchange rate. This amount far exceeds what was owed the DRC to Plaintiffs' predecessors-in-interest at that time. Kirsch Decl. Ex. L. Consequently, at least since that date – and very likely since well before that date – the Central Bank has been jointly liable with the DRC to pay all of the amounts of principal and interest at issue in this action. However, the Central Bank also has failed to pay of those amounts. Kirsch Decl. Exs. I and J.

-4-

In the Credit Agreement, the Defendants also expressly and irrevocably (1) agreed to submit to the jurisdiction of this Court in any action such as this to enforce any claims arising under the Credit Agreement; (2) appointed CT Corporation as their agent for service of process for any such action, and (3) waived any claim of sovereign immunity. Credit Agreement § 12.07. The Credit Agreement is to be governed by and construed in accordance with the laws of the State of New York, without regard for choice-of-law principles. Credit Agreement § 12.10.

On February 25, 2003, both the DRC and the Central Bank acknowledged and confirmed all of their obligations under the Credit Agreement for the purpose of renewing any applicable statute of limitations period or prescription period. Kirsch Decl. Ex. M; N.Y. Gen. Oblig. L. § 17-103 (1).

## II.   <u>Procedural History.</u>

Plaintiffs commenced this action on February 23, 2009 by filing the original summons and complaint. Plaintiffs filed an amended complaint on May 22, 2009, and served the amended complaint on CT Corporation, as Defendants' irrevocably-appointed agent for receipt of service, on May 21, 2009. Kirsch Decl. Ex. N.[2] On June 2, 2009, CT Corporation returned the papers served on it, claiming that it had no record of having been appointed as Defendants' agent. Kirsch Decl. Exs. O, P.[3] After Defendants failed to answer or move to dismiss the amended complaint within 60 days, as required under FSIA Section 1608(d),[4] Plaintiffs served the

---

[2]   Plaintiffs served the original summons and complaint on CT Corporation on May 20, 2009.

[3]   Although CT Corporation's letter is dated May 22, 2009, Federal Express's shipping records indicate that it was not sent until June 2, 2009. Kirsch Decl. Ex. P.

[4]   There is no doubt that Defendants were aware of this action, despite CT Corporation's decision to return the papers to Plaintiffs. As Plaintiffs explained in their December 30, 2009 letter to the Court, Plaintiffs were contacted by counsel that Defendants apparently considered retaining. Kirsch Decl. Ex. Q. Moreover, after it became clear that Defendants were unrepresented, Plaintiffs sent a letter directly to Defendants referring to this action. Kirsch Decl. Ex. R.

Amended Complaint a second time pursuant to FSIA Sections 1608(a)(3) and 1608(b)(3)(B) –
which provide for mail service dispatched by the Clerk of the Court. Service on CT Corporation
was sufficient under U.S. law. However, Plaintiffs may need to seek enforcement of any
judgment awarded in this case outside of the United States in order to obtain full satisfaction of
the debts owed to them. Plaintiffs therefore served the amended complaint a second time to
remove any doubt as to whether Defendants were made aware of this action, thereby avoiding
any difficulties obtaining recognition and enforcement of the judgment abroad.

The Clerk dispatched the mail service on November 16, 2009, and noted on the docket
that the service was received on November 19, 2009. More than 60 days have elapsed since the
Clerk's service was received by Defendants; nonetheless, Defendants still have not answered or
moved to dismiss the Amended Complaint. On February 1, 2010, the Clerk issued a Certificate
of Default. Kirsch Decl. Ex. S.

## ARGUMENT

### I.     Plaintiffs Are Entitled To Summary Judgment.

#### A.     The Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories,
and admissions on file, together with the affidavits, if any, show that there is no genuine issue as
to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(c). "An issue of fact is genuine if the evidence is such that a reasonable jury could
return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the
suit under the governing law." *Roe v. City of Waterbury*, 542 F.3d 31, 35-36 (2d Cir. 2008)
(citations omitted). "Although all inferences must be drawn in favor of the nonmoving party,
mere speculation and conjecture is insufficient to preclude the granting of the motion." *Harlen*

*Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). Summary judgment is particularly appropriate where, as here, the issue before the Court is the interpretation of an unambiguous contract. *See Omni Quartz, Ltd. v. CVS Corp.*, 287 F.3d 61, 64 (2d Cir. 2002) ("The proper interpretation of an unambiguous contract is a question of law for the court, and a dispute on such an issue may properly be resolved by summary judgment.").

### B.   Defendants Have Failed To Satisfy Their Obligations Under The Credit Agreement, And Plaintiffs Are Entitled To Summary Judgment.

"Under New York law, an action for breach of contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994). The evidence submitted with this motion indisputably establishes every element of Plaintiffs' breach of contract claims.

First, the Credit Agreement is an enforceable contract, and Plaintiffs are the rightful assignees of all rights, title, interest, benefits, and obligations of the original lenders with respect to the loan amounts at issue in this case. Section 12.09(b) of the Credit Agreement expressly permits assignments of interests, and Plaintiffs executed Deeds of Assignment and sent all notices required under Credit Agreement. Kirsch Decl. Exs. B-H.

Second, Plaintiffs' predecessors-in-interest performed the contract simply by entering into it. The consideration provided for Defendants' obligations was the restructuring of pre-existing debts, which allowed Defendants to pay the debts over a ten-year period ending in 1990. Credit Agreement R-1-2, § 2.02. No additional performance was required under the Credit Agreement. *See Rexnord Holdings, Inc.*, 21 F.3d at 525 (holding that a settling plaintiff, who was an obligee under the settlement agreement, had "manifest[ly] . . . performed its obligations"); *Taylor Bldg. Mgmt., Inc. v. Global Payments Direct, Inc.*, 19 Misc.3d 1133(A), 2008 WL 2067096, at *4 (N.Y. Sup. Ct. Mar. 20, 2008) (holding that settlement agreements are

freely assignable).

Third, Defendants have breached the Credit Agreement by failing to pay any portion of the principal owed to Plaintiffs, failing to pay any interest since April 2, 1990, and failing to pay other amounts due, such as Plaintiffs' costs in attempting to collect the overdue amounts. Kirsch Decl. Exs. I and J.

Fourth, Plaintiffs have suffered damages through Defendants' breach because neither they nor their predecessors in interest were paid the principal and interest that the Defendants promised to pay under the Credit Agreement.

Nor do Defendants have any valid defense to Plaintiffs' claims. The FSIA provides that a foreign sovereign entity is not immune from jurisdiction when it has "waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver." 28 U.S.C. § 1605(a)(1). Defendants have "each irrevocably agree[d] not to claim and irrevocably waive[d] any and all such immunity to the fullest extent now or hereafter permitted under which laws of the jurisdiction in which any such suit, action or proceeding may be commenced." Credit Agreement § 12.07(c). Nor could Defendants rely on a statute of limitations defense. The statute of limitations was renewed when Defendants acknowledged their obligations in a "writing signed by the party to be charged," and Plaintiffs filed their complaint less than six years after the date of that writing. N.Y. Gen. Oblig. L. § 17-103; Kirsch Decl. Ex. M.

## II.   Defendants Have Defaulted By Failing To Plead or Defend, And Plaintiffs Are Entitled To A Default Judgment.

Pursuant to Federal Rule of Civil Procedure 55(a) and Local Rule 55.1, the Clerk of the Court has issued a Certificate of Default. Kirsch Decl. Ex. S. However, the FSIA provides that '[n]o judgment by default shall be entered . . . unless the claimant establishes his claim or right to

-8-

relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e). This provision is analogous to the protections afforded to the federal government under Rule 55(e). H.R. Rep. No. 94-1487, at 25-26, *reprinted in* 1976 U.S.C.C.A.N. at 6604, 6624-25; *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 242 (2d Cir. 1994).

There is no question that the Certificate of Default was properly issued by the Clerk. The FSIA provides that service "shall be made . . . by service of the summons and complaint in accordance with any special arrangement for service" between the plaintiff and the foreign state, agency, or instrumentality. 28 U.S.C. § 1608(a)(1), (b)(1). Defendants' service on Defendants' "irrevocably appointed" agent, CT Corporation, was sufficient, even though CT Corporation returned the service to Plaintiffs, claiming that it had no record of being appointed as Defendants' agent. *See Mastec Latin America v. Inepar S/A Industrias E Construcoes*, No. 03 CIV 9892 (GBD), 2004 WL 1574732, at *3 (S.D.N.Y. July 13, 2004) ("The fact that CT Corporation denied, upon receipt, that it was then authorized to receive process on behalf of defendant, and returned the legal papers to plaintiff, does not render the service ineffective."). Defendants did not appear or file an answer within the 60-day limit provided for by Section 1608(d) the FSIA, and therefore are in default.

Plaintiffs' second form of service also was proper. Because the DRC is not a party to any treaty governing the service of process abroad in U.S. legal proceedings, the FSIA permits service "by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned." 28 U.S.C. § 1608(a)(3), (b)(3)(B). This service was initiated on November 16, 2009, and completed November 19, 2009, as noted

by the Clerk of the Court in docket entries dated November 16, 2009 and November 24, 2009.

Nor is there any doubt that Plaintiffs have established that their claims "are supported by evidence." *Commercial Bank of Kuwait*, 15 F.3d at 242. Section 1608 does not "require an evidentiary hearing if one would ordinarily not have been held, nor does [it] require the court to demand more or different evidence than it would ordinarily receive in order to make its decision." *Id.* (citations omitted). Moreover, in enacting Section 1608(e), Congress "expected that courts will take into account the extent to which the plaintiff's case depends on appropriate discovery against the foreign state." H.R. Rep. No. 94-1487, at 26, *reprinted in* 1976 U.S.C.C.A.N. at 6604, 6625. Because Plaintiffs have satisfied the heavier burden of the summary judgment standard – which does not take into account any need for discovery – they necessarily have satisfied their burden under the FSIA for obtaining a default judgment. *See supra* Section I(B).

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant summary judgment in favor of Plaintiffs against Defendants or, in the alternative, grant default judgment in favor of Plaintiffs against Defendants.

Dated: New York, New York
       February 1, 2010

Respectfully submitted,

DECHERT LLP

By:
       Dennis H. Hranitzky
       Eric C. Kirsch
       1095 Avenue of the Americas
       New York, New York 10036
       (212) 698-3500 (phone)
       (212) 698-3599 (facsimile)
       *Attorneys for Plaintiffs Themis Capital and*
       *Des Moines Investments Ltd.*