UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x
THEMIS CAPITAL and                             :
DES MOINES INVESTMENTS LTD.,       :        No. 09 Civ. 1652 (PAE)
                                                               :
              Plaintiffs,                              :
v.                                                           :
                                                               :
DEMOCRATIC REPUBLIC OF CONGO       :
and CENTRAL BANK OF THE                    :
DEMOCRATIC REPUBLIC OF THE            :
CONGO,                                                  :
                                                               :
              Defendants.                           :
------------------------------------------------------ x


# SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

                           DECHERT LLP
                             Dennis H. Hranitzky
                             (dennis.hranitzky@dechert.com)
                             Eric C. Kirsch
                             (eric.kirsch@dechert.com)
                       1095 Avenue of the Americas
                       New York, New York 10036
                       (212) 698-3500

                     *Attorneys for Plaintiffs Themis Capital*
                     *and Des Moines Investments Ltd.*

April 16, 2012

14403380

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT .............................................................................................................................. 2

I.    The Doctrine Of Apparent Authority Applies To Commercial Agreements Involving Foreign Sovereign Governments. ................................................................. 2

    A.    State Apparent Authority Law Was Applied To Commercial Acts In *First Fidelity*. ........................................................................................................... 2

    B.    *First Fidelity* Does Not Require More Than An Agent's Signature If The Agent's Appointment To An Office Creates Apparent Authority. ........................ 5

    C.    *First Fidelity* Is Binding, As Subsequent Cases Confirm. ..................................... 6

II.    Other Circuits Have Limited The Doctrine Of Apparent Authority Only With Respect To Determinations Of Immunity. ........................................................................ 9

CONCLUSION ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**CASES**

*Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.*,
    179 F.3d 1279 (11th Cir. 1999) ............................................................................................4, 5

*Corcoran v. Government of Antigua & Barbuda-Permanent Mission*
    No. 89 Civ. 0047(PNL), 1990 U.S. Dist. LEXIS 3936 (S.D.N.Y. Apr. 10, 1990) ....................8

*Dale v. Colagiovanni*,
    443 F.3d 425 (5th Cir. 2006) ....................................................................................................9

*First Fidelity Bank, N.A. v. Government of Antigua & Barbuda-Permanent Mission*,
    877 F.2d 189 (2d Cir. 1989) ............................................................................................ passim

*Jota v. Texaco Inc.*,
    157 F.3d 153 (2d Cir. 1998) .................................................................................................7, 8

*Legal Status of Eastern Greenland (Den. v. Nor.)*,
    1933 P.C.I.J. (ser. A/B) No. 53 (Apr. 5) ...................................................................................3

*NML Capital, Ltd. v. Republic of Argentina*,
    No. 10-4450, 2012 U.S. App. LEXIS 6492 (2d Cir. Mar. 30, 2012) ........................................3

*Phaneuf v. Republic of Indonesia*,
    106 F.3d 302 (9th Cir. 1997) ....................................................................................................9

*Republic of Benin v. Mezei*,
    No. 06 Civ. 870 (JGK), 2010 U.S. Dist. LEXIS 93848 (S.D.N.Y. Sept. 8, 2010) ....................8

*Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft
    v. Republic of Romania*,
    123 F. Supp. 2d 174 (S.D.N.Y. 2000) .................................................................................7, 8

*Storr v. National Defence Security Council of the Republic of Indonesia – Jakarta*,
    1997 U.S. Dist. LEXIS 15890 (S.D.N.Y. Oct. 9, 1997) ...........................................................8

*Velasco v. Gov't of Indonesia*,
    370 F.3d 392 (4th Cir. 2004) ....................................................................................................9

**STATUTES**

28 U.S.C. § 1606 ..............................................................................................................4, 6, 9, 10

N.Y. CPLR § 203 .............................................................................................................................9

**OTHER AUTHORITIES**

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604 ..................................................................................................................................4

Plaintiffs respectfully submit this supplemental memorandum of law in further support of their motion for summary judgment against Defendants, as directed in the Order dated April 3, 2012 (the "Order").[1]

## PRELIMINARY STATEMENT

The Court has requested supplemental briefing on the issue of apparent authority. In particular, the Court noted disagreements in other circuits with Second Circuit's opinion in *First Fidelity Bank, N.A. v. Government of Antigua & Barbuda-Permanent Mission*, 877 F.2d 189 (2d Cir. 1989), and it requested briefing on what the law of this Circuit is with respect to apparent authority "as applied to commercial agreements involving sovereign governments."

Courts in this circuit have consistently applied the doctrine of apparent authority to foreign states, as binding authority from the Second Circuit requires. In applying that doctrine, they cite cases, Restatement provisions, and treatises setting forth the New York common law of agency. They also have acknowledged the principle that an agent can have apparent authority based on the office to which he is appointed, subject to certain limited common law exceptions. Plaintiffs established in prior briefing, however, that there are no genuine issues of material fact with respect to any such exception here.

Certain circuits have disagreed with *First Fidelity* – disparaging the Second Circuit by saying the decision lacked analysis, despite the extensive analysis described below in Section I(A) – but in the entirely different context of determining whether immunity exists. The Foreign Sovereign Immunities Act ("FSIA") establishes special requirements for establishing jurisdiction over a foreign state. Once jurisdiction is established, the FSIA commands that a foreign state is

---

[1]  Capitalized terms not otherwise defined in this supplemental memorandum have the meaning given to them in the Memorandum Of Law In Support Of Plaintiffs' Motion For Summary Judgment ("Pl. Br."), dated December 23, 2011.

liable to the same extent as a private actor.  Each of the cases disagreeing with *First Fidelity* deals with the first question – immunity from jurisdiction – and bases its conclusion on the language of the special requirements of the FSIA.  The question before this Court is ***not*** sovereign immunity regarding jurisdiction.  Instead the question relates to the statute of limitations, which is a question of liability.  Thus, the FSIA itself provides a basis for distinguishing the sister circuit cases and applying New York state common law.

## ARGUMENT

I. **The Doctrine Of Apparent Authority Applies To Commercial Agreements Involving Foreign Sovereign Governments.**

    A. **State Apparent Authority Law Was Applied To Commercial Acts In *First Fidelity*.**

In *First Fidelity*, the Second Circuit decided whether Antigua was bound by a settlement agreement signed by the Antiguan ambassador to the United Nations, which related to a defaulted loan agreement that also had been signed by the ambassador in his official capacity. 877 F.2d at 191.  The Second Circuit determined that because the doctrine of apparent authority applies to ambassadors' the public acts, such as entering into treaties, it also must apply to ambassadors' commercial acts.

The Second Circuit first concluded that apparent authority applies to ambassadors' public acts, such as signing treaties.  It analyzed Section 311 of the Restatement (Third) of Foreign Relations, which provides that "[a] person is authorized to represent a state for purposes of concluding an international agreement if (a) he produces full powers or (b) such authority clearly appears from the circumstances" and that "[a] state may not invoke a violation of its internal law to vitiate its consent to be bound unless the violation was manifest and concerned a rule of fundamental importance."  *See First Fidelity*, 877 F.2d at 192 (citing Section 311).  It also

analyzed an opinion from the Permanent Court of International Justice, which held that Norway was bound by the oral assurances of its Minister of Foreign Affairs. *Id.* (citing *Legal Status of Eastern Greenland (Den. v. Nor.)*, 1933 P.C.I.J. (ser. A/B) No. 53 (Apr. 5)). The Permanent Court of International Justice held that:

> [I]t [is] beyond all dispute that a reply of this nature given by the Minister for Foreign Affairs on behalf of his Government in response to a request by the diplomatic representative of a foreign Power, in regard to a question falling within his province, is binding upon the country to which the Minister belongs.

*Legal Status of Eastern Greenland*, 1933 PCIJ (ser. A/B) No. 53 at 71. Based on these authorities, the Second Circuit concluded that principles of apparent authority apply to ambassadors' public acts.

The Second Circuit continued its analysis by holding that the settlement agreement at issue was not the result of a public act, like a treaty is, but rather the result of a commercial act: entering into a contract.[2] *First Fidelity*, 877 F.2d at 193. Thus, the Restatement (Third) of Foreign Relations and *Eastern Greenland* were not directly applicable. *Id.* However, the Court noted that Section 311(3) is "analogous to national laws as to the authority of agents." *Id.* (citing Restatement (Third) of Foreign Relations § 311 Reporters' note 4). The Court also reasoned that "[i]nternational agreements have considerably more dignity than Jacobs' purely commercial transactions with First Fidelity." *Id.* at 192. The Court therefore concluded that that "the agency law of developed states, here our own, provides the proper framework for that examination." *Id.*

---

[2]   "To determine the nature of a sovereign's act, [the Second Circuit] ask[s] whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in trade and traffic or commerce." *NML Capital, Ltd. v. Republic of Argentina*, No. 10-4450, 2012 U.S. App. LEXIS 6492, at *9 (2d Cir. Mar. 30, 2012) (emphasis added, and citations and quotation marks omitted).

The Second Circuit's reasoning is consistent with the principles underlying the FSIA. Under the restrictive theory of sovereign immunity, courts must distinguish between "a foreign state's public acts (jure imperii)" and "its commercial or private acts (jure gestionis)." H.R. Rep. No. 1487, 94th Cong., 2d Sess. 16 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6604, 6605. Public acts are protected by immunity, while commercial acts are not. Thus, where immunity does not apply, the FSIA commands that "the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances … ." 28 U.S.C. § 1606. The Second Circuit correctly reasoned that if apparent authority can apply to the public act of entering into a treaty, which is entitled greater protection from courts, then apparent authority must also apply to the commercial activity of entering into a contract.

The Eleventh Circuit has adopted a rule that "parallels" *First Fidelity*. *Aquamar S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1299 n.42 (11th Cir. 1999). It held that "courts should assume that an ambassador possesses the authority to appear before them and waive sovereign immunity absent compelling evidence making it 'obvious' that he or she does not." *Id.* at 1299. Although the Eleventh Circuit noted that the Second Circuit "assum[ed] without deciding that state law applies", *id.* at 1294 n.36, its only quibble with *First Fidelity* is the Second Circuit's application of "state agency law, rather than the federal and international law principles." *Id.* at 1299 n.42. Both courts appear to agree that this difference is semantic. The Second Circuit acknowledged that it had "assume[d] without deciding [] that New York law governs Jacobs' transactions with the bank, ***although [it] [did] not believe that the federal common law rule … would be any different***." *First Fidelity*, 877 F.2d at 194 n.3 (emphasis added). And the Eleventh Circuit noted that "the rule [the Second Circuit] arrived at parallels

ours: courts should accept ambassadors' authority absent 'obvious' evidence that they lack it." *Aquamar*, 179 F.3d at 1299 n.42.

In this action, the question of apparent authority relates to a commercial act: the renewal of a limitations period for a breach of a loan agreement.  Thus, the Second Circuit's reasoning applies here, and ordinary principles of agency law, including apparent authority, should apply.  Because the question involves the renewal of the New York statute-of-limitations period for claims before a New York court arising out of a New York law-governed contract, New York principles of apparent authority apply.

### B. *First Fidelity* Does Not Require More Than An Agent's Signature If The Agent's Appointment To An Office Creates Apparent Authority.

The Second Circuit clearly held in *First Fidelity* that apparent authority can be based on an agent holding a particular office.  However, it recognized that certain limited exceptions to this principle may apply under New York law.  Because Plaintiffs have established in prior briefing that there are no genuine issues of material fact with respect to any of these exceptions, *First Fidelity* supports the conclusion that apparent authority can be based solely on the signature of an agent holding a particular office.

In the public action context, the Second Circuit recognized that "a state can be bound by the representative's unauthorized actions where the lack of authority is not obvious" – suggesting that apparent authority does not apply where a lack of authority is obvious.  *First Fidelity*, 877 F.2d at 192.  The Second Circuit also recognized that coercion or corruption renders an agreement void.  *Id.* (citing Restatement (Third) of Foreign Relations §§ 331(2)(a), 331(1)(c)).

In the commercial context, the Second Circuit recognized that "[t]he appointment of a person to a position with generally recognized duties may create apparent authority", subject to a "factual inquiry into the principal's manifestations to third persons" and the "duty of inquiry."

*Id.* at 193-94.  This is a restatement of the common law doctrine of apparent authority that is applicable in all commercial contexts: a person's position can create apparent authority, unless the principal manifests an obvious intention to the contrary, or something extraordinary in the circumstances in the surrounding the transaction triggers a duty to inquire.  *See* Reply Br. at 6-9.

The debate between the majority and the dissent in *First Fidelity* was whether an ambassador's signature was absolutely binding on a foreign state, as the dissent argued and the district court held, or whether evidence could be presented to establish that some common law exception to apparent authority existed, as the majority held.  The Second Circuit did not purport to create a new test for apparent authority for foreign states, but instead outlined the contours of the common law doctrine and remanded the case for a determination of the issue.  Thus, when the Second Circuit stated that an official's signature "is relevant in deciding whether First Fidelity's reliance upon his authority was reasonable", *First Fidelity*, 877 F.2d at 194, it did not hold that such a showing is insufficient.  Instead, it was noting that other evidence, such as evidence of extraordinary circumstances, may be relevant under the New York law of agency.

Plaintiffs have established that, under New York agency law, Defendants have failed to raise a genuine issue of material fact with respect to Mr. Luongwe's apparent authority.  Reply Br. at 7.  *First Fidelity* and Section 1606 of the FSIA require this Court to apply that body of law, and neither imposes any heightened requirements because the DRC is a foreign state.

      **C.**    ***First Fidelity* Is Binding, As Subsequent Cases Confirm.**

Both the Second Circuit and district courts in this circuit have followed *First Fidelity* and applied the doctrine of apparent authority to foreign states.  In doing so, they have relied on the same principles of New York law that apply to non-sovereign entities, and they have recognized that apparent authority can exist based solely on an agent's appointment to a particular office.

The Second Circuit applied *First Fidelity* in *Jota v. Texaco Inc.*, 157 F.3d 153 (2d Cir. 1998). The Republic of Ecuador argued that a district court could not rely on representations made during litigation by its ambassador because only the Ecuadorian attorney general was permitted, under Ecuadorian law, to represent the state in court proceedings. The Second Circuit noted that ambassadors generally have the power to bind the foreign states that they represent. Because there was no evidence of collusion with another contracting party or another exception to the doctrine of apparent authority, the Ecuadorian ambassador's position alone was sufficient to establish apparent authority to bind Ecuador. 157 F.3d at 163.

District courts in the Second Circuit also continue to follow *First Fidelity*, both implicitly and explicitly. In *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co. Kommanditgesellschaft v. Republic of Romania*, 123 F. Supp. 2d 174 (S.D.N.Y. 2000), the doctrine of apparent authority was applied with respect to the Minister of Finance of the Republic of Romania in litigation arising out of a commercial agreement. The court held that implied authority existed because of the Minister's position, and apparent authority existed because of Romania's affirmative representations. 123 F. Supp. 2d at 185-86, 190. The court relied on non-sovereign New York agency law cases to set forth the law of actual and apparent authority – implicitly reaffirming the *First Fidelity* principle that ordinary laws of agency should be applied to foreign states.

Other cases have acknowledged that *First Fidelity* is controlling, but declined to find apparent authority based on the facts of those particular cases. For example, in *Storr v. National Defence Security Council of the Republic of Indonesia – Jakarta*, the court noted that the Ninth Circuit had questioned *First Fidelity*, but went on to apply *First Fidelity*'s New York state-law test to the question of whether certain promissory notes were properly issued. No. 95 Civ. 9663

-7-

(AGS), 1997 U.S. Dist. LEXIS 15890, at *7–9 (S.D.N.Y. Oct. 9, 1997).  The court concluded that the plaintiff could not rely on an agreement signed by the Indonesian ambassador based on his position because ambassadors do not ordinarily have the power to issue promissory notes and because the payment terms were highly suspicious and indicative of fraud.  *Id.*  Similarly, in *Corcoran v. Government of Antigua & Barbuda-Permanent Mission*, then-District Judge Leval concluded that apparent authority governed the issue of whether Antigua was bound by an insurance contract.  No. 89 Civ. 0047(PNL), 1990 U.S. Dist. LEXIS 3936, at *6–7 (S.D.N.Y. Apr. 10, 1990).  Although issues of fact existed, the court relied on sections of New York Jurisprudence relating to the law of agency and a non-sovereign case, and noted that individuals can obtain apparent authority based simply on their appointment to a position.  *Id.* at *7 n.2.

Judge Koetl's opinion in *Republic of Benin v. Mezei*, No. 06 Civ. 870 (JGK), 2010 U.S. Dist. LEXIS 93848, (S.D.N.Y. Sept. 8, 2010), neither calls *First Fidelity* into question nor represents a full and accurate presentation of the law of this Circuit for several reasons.  *First*, the court did not hold that *First Fidelity* is no longer good law; instead, it simply noted an apparent circuit split, and held that apparent authority did not exist on the facts of its case.  *Second*, the court mistakenly stated that the Second Circuit only applied the doctrine of apparent authority in *First Fidelity*, when in fact the Second Circuit reaffirmed that holding in *Jota*.  The court also did not distinguish – or even acknowledge – the line of district court cases in this circuit implementing *First Fidelity*'s approach of applying the ordinary law of agency to foreign states.  *Third*, the court began its analysis from an incorrect starting point by relying on cases limiting the liability of the United States (and individual states) in dealings with their own citizens.  Congress expressly repudiated any such limitations in cases involving foreign states by providing that foreign states "shall be liable in the same manner and to the same extent as a

-8-

private individual under like circumstances … ."  28 U.S.C. § 1606.  Moreover, *First Fidelity* established that the proper analogue is the law of international relations.

## II. Other Circuits Have Limited The Doctrine Of Apparent Authority Only With Respect To Determinations Of Immunity.

Although certain other circuits have disagreed the Second Circuit's approach to apparent authority, they have done so in the context of foreign sovereign immunity determinations, rather than when addressing liability issues.  Because immunity has been waived and the FSIA commands that liability questions be answered as if Defendants were private actors, these cases are distinguishable from this action.

The Ninth Circuit and the Fourth Circuit both questioned *First Fidelity* when determining whether an Indonesian ambassador could waive immunity from jurisdiction by endorsing promissory notes.  *Phaneuf v. Republic of Indonesia*, 106 F.3d 302, 308 (9th Cir. 1997); *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 400 (4th Cir. 2004).  Both circuits were plainly incorrect in stating that *First Fidelity* provided "no analysis" or no "substantial analysis", *Phaneuf*, 106 F.3d at 308 n.4; *Velasco*, 370 F.3d at 400, given the Second Circuit's extensive analysis, which is described above in Section I(A).  In any event, both circuits based their holdings on their interpretation of the plain language of Section 1605 of the FSIA, which addresses immunity from jurisdiction.  When the Fifth Circuit adopted their reasoning, it also did so in the context of construing Section 1605 of the FSIA.  *Dale v. Colagiovanni*, 443 F.3d 425, 428 (5th Cir. 2006).

None of these cases is relevant to the question before this Court, which turns on Section 1606 of the FSIA, rather than Section 1605.  As Plaintiffs have established, Defendants do not contest that the Credit Agreement is a valid, enforceable agreement, and immunity was irrevocably waived in that agreement.  Reply Br. at 3.  The statute of limitations is a defense to *liability* that can bar recovery on causes of action, and nothing in Defendants' waiver of

immunity is conditioned on the statute of limitations.  *Id.*; *see* N.Y. CPLR § 203(a) ("The time within which an action must be commenced, except as otherwise expressly prescribed, shall be computed from the time the cause of action accrued to the time the claim is interposed.").  The statute of limitations does not purport to extinguish a contract because certain claims under that contract have are barred.  Indeed, even if this Court accepts Defendants' limitations defense, it only applies to amounts that were due and owing for more than six years – and not to any amounts of interest that came due during the six years before this action was filed.  Thus, Section 1605 is satisfied and an exception to immunity applies, regardless of the enforceability of the Renewal Agreement.

Because jurisdiction has been established, the apparent authority question before this Court is solely a question of liability, which is governed by Section 1606 of the FSIA.  The basic reasoning of the Fourth, Fifth, and Ninth Circuits – that the FSIA means what it says – actually supports Plaintiffs' position because the FSIA provides that foreign states "shall be liable in the same manner and to the same extent as a private individual under like circumstances" once jurisdiction has been established.  28 U.S.C. § 1606.  This express language – and all circuits' apparent agreement that it should be enforced as written – also confirms that this Court should not rely on cases governing dealing between the U.S. and its own citizens, which impose special limitations on apparent authority that are not applicable to private actors.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant summary judgment in favor of Plaintiffs against Defendants.

Dated: New York, New York  
April 16, 2012

Respectfully submitted,

DECHERT LLP

By: /s/ Dennis H. Hranitzky  
Dennis H. Hranitzky  
Eric C. Kirsch

1095 Avenue of the Americas  
New York, New York 10036  
(212) 698-3500 (phone)  
(212) 698-3599 (facsimile)

*Attorneys for Plaintiffs Themis Capital and Des Moines Investments Ltd.*