UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                       :

THEMIS CAPITAL, LLC and DES MOINES       :
INVESTMENTS LTD.,                               :
                                                :        09 Civ. 1652 (PAE)
                              Plaintiffs,    :
                      -v-                 :        OPINION & ORDER
                                             :
DEMOCRATIC REPUBLIC OF CONGO and CENTRAL :
BANK OF THE DEMOCRATIC REPUBLIC OF THE   :
CONGO,                                     :
                                             :
                            Defendants.   :
                                           :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiffs Themis Capital, LLC ("Themis") and Des Moines Investments, Ltd. ("Des

Moines") (collectively, "plaintiffs") bring this claim for breach of contract under New York law

against the Democratic Republic of the Congo and the Central Bank of the Democratic Republic

of the Congo (collectively, "defendants").  Defendants have moved for leave to amend their

Answer.  In an Order issued March 27, 2013, the Court denied that motion.  Dkt. 141.  This

Opinion and Order sets forth the bases for that ruling.

I.      **Factual Background**[1]

        On March 31, 1980, the Republic of Zaire, a sovereign state in Central Africa, and the

Bank of Zaire, Zaire's national bank, entered into a Refinancing Credit Agreement with various

---

[1] The Court assumes familiarity with its Opinion & Order of July 26, 2012 (Dkt. 84)
("Opinion"), which recounts the history and facts of this dispute in detail.  In addition to the
sources listed therein, the Court draws upon the Declaration of Sara Z. Moghadam in Support of
Defendants' Motion for Leave to Amend Answer (Dkt. 133) ("Moghadam Decl.") and the
Declaration of Joshua I. Sherman in Opposition to Defendants' Motion for Leave to Amend
(Dkt. 140) ("Sherman Decl."); plaintiffs' Amended Complaint ("Am. Compl.") (Dkt. 5); and
defendants' Answer to the Amended Complaint ("Answer") (Dkt. 70).

creditors and agents (the "Credit Agreement" or "Agreement").  The Credit Agreement restructured various debts that Zaire owed to its creditors.  The creditors were listed in a "Credit Information Schedule" attached to the Credit Agreement.

The plaintiffs acquired the debt from original creditors in the secondary market, as reflected in final deeds of assignment, dated August 5, 2008, as to plaintiff Themis, and February 2, 2009, as to plaintiff Des Moines.  Sherman Decl. Exs. A–B.  These deeds identify the former owners of the debt and trace the various transfers from those owners, through other banks, and ultimately, to Themis and Des Moines.  The deeds reflect that Red Barn Capital, LLC, assigned its interest to Themis, and that Main Street Capital, LLC, assigned its interest to Des Moines.

Plaintiffs allege that defendants failed to pay any outstanding principal or corresponding interest due under the 1980 Credit Agreement either to plaintiffs' predecessors-in-interest, or to plaintiffs themselves.  Am. Compl. ¶¶ 20, 23.  Defendants do not dispute that no such payment has ever been made.  *See* Dkt. 69 ("Def. 56.1") ¶ 7.  Defendants also do not dispute that this is the first lawsuit to seek payment of the sums due under the Credit Agreement.  In other words, the original or intervening creditors, before transferring their rights to Themis and Des Moines, never pursued a claim that defendants breached the Credit Agreement.

## II.    Procedural Background

On February 23, 2009, plaintiffs brought this lawsuit.  Dkt. 1.  They allege that defendants breached the Credit Agreement by failing to pay the outstanding principal and interest owed to plaintiffs as assignees.  On May 22, 2009, plaintiffs filed an Amended Complaint.  Dkt. 5.  On May 20, 2009, and again on November 19, 2009, service of the Amended Complaint on the defendants was executed.  Dkt. 3–4, 7–8.  Defendants did not appear after such service.

2

On February 1, 2010, plaintiffs moved for summary judgment or, in the alternative, a default judgment.  Dkt. 9–12.  On April 28, 2010, Hon. George B. Daniels, to whom this case was then assigned, entered an order granting default judgment.  Dkt. 13.  On June 17, 2010, Judge Daniels referred this case to Hon. Kevin N. Fox, the assigned Magistrate Judge, for a calculation of the amounts of interest owed to plaintiffs.  Dkt. 15.  On November 1, 2010, Judge Fox issued a Report and Recommendation ("Report") that the Court adopt plaintiffs' interest calculations.  Dkt. 16.  It recommended that plaintiffs be awarded $18,003,558.32 in principal, $61,316,391.16 in interest, and $228,405.24 in "out-of-pocket" expenses.  *See* Report 6.

On November 29, 2010, defendants made their first appearance in this case, in the form of a letter to the Court requesting additional time to object to the Report.  Plaintiffs consented to the request.  On January 21, 2011, defendants filed objections to the Report.  Dkt. 23–24.  On March 4, 2011, plaintiffs responded to those objections.  Dkt. 28–29.

On April 28, 2011, defendants moved to set aside the default judgment, with the consent of plaintiffs.  Dkt. 30–32.  On June 3, 2011, the Court granted the unopposed motion and entered an order setting aside the default.  Dkt. 38.

On June 28, 2011, Judge Daniels referred the case to Magistrate Judge Fox for the purpose of settlement.  Dkt. 44.  Settlement negotiations were unsuccessful.  On December 6, 2011, following reassignment of the case, the Court held a pre-motion conference and set a schedule for the briefing of plaintiffs' pre-discovery summary judgment motion.

On January 28, 2012, along with their opposition to plaintiffs' summary judgment motion, defendants submitted their Answer to the Amended Complaint.  Dkt. 70.  The Answer admits that plaintiffs are assignees of the claimed "rights, title, interests, benefit, and obligations under the Credit Agreement."  Answer ¶¶ 15 (Des Moines), 18 (Themis).  It is this Answer that

the defendants now propose to amend.  Defendants seek (1) to assert instead that they lack

sufficient knowledge and information to form a belief as to the truth of plaintiffs' interests in the

debt, and (2) to add an affirmative defense that plaintiffs lack standing and/or are not the real

parties in interest.

On July 26, 2012, the Court issued a lengthy Opinion & Order (the "Opinion" or "Op."),

denying plaintiffs' motion for summary judgment, without prejudice to their renewing it after a

period of limited discovery.  Dkt. 84.  The Opinion expressly relied on the fact that the validity

of the assignment to plaintiffs was undisputed.  On the basis of these undisputed facts, the Court

found that "Themis Capital ('Themis') and Des Moines Investments, LLC ('Des Moines') are

the assignees of all rights, title, interest, benefits, and obligations in the debt owed to the

creditors under the Credit Agreement."  Op. 2.  The Court noted that "Defendants do not dispute

these facts."  *Id.* n.2.

In the Opinion, the Court ordered limited discovery on facts bearing on the open issues in

the case: specifically, as to (1) the communications leading up to a letter from defendants in

2003, which purported to waive the statute of limitations as to the debt at issue (the "2003

Letter"); (2) the drafting of the 2003 Letter by defendants and plaintiffs' predecessors; (3) the

authenticity of the signatures on the 2003 Letter; and (4) the actual authority of the signatories to

the Letter.  Op. 35–36.  Although the Court's was a nonexhaustive list, it pointedly did not

include discovery as to the assignment of the claims, and discovery as to such point would have

served no purpose, given the undisputed validity of the assignment to plaintiffs.  The Court

added:  "Absent application by the parties, the Court does not envision needing discovery on

subjects other than those addressed in this Opinion and Order."  *Id.* at 26.  The Court also

admonished defendants that, especially given their role in creating the delay, they "should not

expect extensions to the discovery schedule. *Id.* at 37. At no time did defendants seek leave from the Court to pursue discovery relating to plaintiffs' assignment.

On August 6, 2012, the Court entered a case management order, under which fact discovery was to close by November 30, 2012. Dkt. 85. The plan also stated that "[a]ny motion to amend or to join additional parties shall be filed within 30 days from the date of this Order." *Id.* On November 13, 2012, after a phone conference addressing outstanding discovery requests, the Court issued an amended case management plan, which extended the period for fact discovery until February 7, 2013. Dkt. 97. Again, the Court granted 30 days in which to seek leave to amend pleadings. *Id.*

On December 12, 2012, defendants' counsel, Nady Mayifuila, Esq., submitted a motion to withdraw as counsel. Dkt. 106–108. After a phone conference with the parties, the Court stayed Ms. Mayifuila's motion for 60 days to allow defendants sufficient time to retain new counsel. Dkt. 111. The Court also directed that party discovery continue for 30 days. *Id.*

On January 25, 2013, within the 60-day deadline given by the Court, DLA Piper LLP ("DLA") appeared on behalf of defendants. Dkt. 122. On February 1, 2013, the Court set yet another amended case management plan, extending fact discovery to April 19, 2013. Dkt. 131.

On March 1, 2013, defendants filed the instant motion, seeking to amend their Answer. Dkt. 132–134. On March 15, 2013, plaintiffs submitted an opposition to the motion. Dkt. 139–140. On March 27, 2013, the Court denied defendants' motion with an opinion to follow. The Court issued its pre-opinion ruling to eliminate the possibility that uncertainty as to the attempted amendment might disrupt the ongoing discovery process. Dkt. 141.

### III.   Applicable Legal Standards

Under Federal Rule of Civil Procedure 15(a)(1), a party may amend its complaint once as a matter of course 21 days after serving it or 21 days after a responsive pleading.  Where, as here, a party has foregone its one "matter of course" amendment, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires."  *Id.*  However, "it is within the sound discretion of the district court to grant or deny leave to amend."  *Green v. Mattingly*, 585 F.3d 97, 104 (2d Cir. 2009).

The Supreme Court has directed courts to grant leave to amend under Rule 15 in the absence of factors "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200–01 (2d Cir. 2007).  The Court concludes that defendants' proposed amendment would cause undue delay, would result in prejudice to plaintiffs, and is futile.  For all of those reasons, the motion to amend is denied.

### IV.   Discussion

#### A.  Delay and Prejudice

Delay may justify denial of leave to amend "if the party seeking to amend acted in bad faith, if the amendment would prejudice the opposing party, or if the amendment would effect an unjustified amendment to a Rule 16(b) scheduling order."  *Purdue Pharma L.P. v. Ranbaxy Inc.*, No. 10 Civ. 3734 (SHS), 2012 WL 3854640, at *5 (S.D.N.Y. Sept. 5, 2012).  Defendants seek now to amend the answer that they filed in January 2012.  By doing so, they seek to withdraw

their longstanding admission that plaintiffs are the rightful holders of the debt.  Plaintiffs are correct that permitting defendants to do so would "inject an entirely new 'disputed' issue of fact into the case."  Pl. Br. 13.

This case was commenced more than four years ago, on February 23, 2009.  Defendants have not pointed to any reason, other than their 11th-hour substitution of new counsel, why they did not seek, at an earlier juncture, to amend their Answer.  And the retention of new counsel does not provide good cause for an amendment:  A party who "voluntarily chose [an] attorney as his representative in [an] action . . . cannot . . . avoid the consequences of the acts or omissions of this freely selected agent."  *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962); *see also Davidowitz v. Patridge*, No. 08 Civ. 6962 (NRB), 2010 WL 1779279, at *5 (S.D.N.Y. Apr. 23, 2010) ("[L]itigants are generally bound by the professional conduct of the attorneys they choose to represent them, although the conduct of counsel may give rise to a claim for malpractice by the client." (citation omitted)).

Although delay alone does not justify denying leave to amend, "'the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.'"  *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).  In determining whether a party will be prejudiced, the Second Circuit has instructed courts to consider

> whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction.  Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend.

*Block*, 988 F.2d at 350; *accord Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (a court has the discretion to deny leave to amend "where the motion is made after an inordinate

delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant"); *Amaker v. Haponik*, 198 F.R.D. 386, 390 (S.D.N.Y. 2000).

"[T]he prejudice to the opposing party resulting from a proposed amendment [i]s among the 'most important' reasons to deny leave to amend." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)). "Undue prejudice arises when an 'amendment [comes] on the eve of trial and would result in new problems of proof.'" *Ruotolo v. City of N.Y.*, 514 F.3d 184, 192 (2d Cir. 2008) (alteration in original) (quoting *State Teachers Ret. Bd.*, 654 F.2d at 856).

Here, the parties are on the eve of a motion for a summary judgment. It is plaintiffs' third such motion: the first resulted in entry of a default judgment in their favor, later vacated after defendants belatedly appeared; and the second was denied without prejudice, to enable the parties to undertake targeted discovery on issues relating to the actual and apparent authority of the signatories of the 2003 Letter. Discovery on these points was recently extended to May 10, 2013, and a pre-motion conference is scheduled for June 7, 2013. Dkt. 145–146. The limited discovery authorized by the Court has been ongoing since August 2012. It has required multiple interventions by the Court. Broadening this litigation as this very late date to encompass a whole new area of dispute—relating to the validity of a series of assignments the occurred years ago—and allowing defendants to assert an entirely new affirmative defense, would necessarily require, yet again, a substantial extension of the discovery period in the case. It would defer the anticipated summary judgment motion by several months, at the very least.

These delays would also impose costs and visit prejudice on plaintiffs. Discovery has encompassed both party and non-party discovery. It has spanned continents. Both parties have

put in substantial time and effort into seeking decades-old documents.  Plaintiffs have borne

much of the cost of the third-party discovery.  *See* Pl. Br. 12 n.6.  Permitting an amendment

would open up new areas of discovery, and potentially reopen old areas.  That risk is made more

real because, before making this motion, defendants had given no indication that they might seek

to put the validity of plaintiffs' assignments at issue.  Plaintiffs, in building their discovery plan,

were thus not on notice that they might have to prove an additional element of their claim.  Quite

the contrary:  Defendants had affirmatively conceded the validity of the assignments to plaintiffs.

Accordingly, plaintiffs did not seek discovery on the issue of the assignment, either from

defendants or from third parties.  Pl. Br. 15–16.  This, too, weighs in favor of denying the

motion.  *See Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000) ("[W]e will be

most hesitant to allow amendment where doing so unfairly surprises the non-movant and

impedes the fair prosecution of the claim.").

     In light of the fact that this case has been long pending, that discovery has generously

been extended, that defendants' admissions and conduct of this litigation led plaintiffs (and the

Court) to conclude that the validity of plaintiffs' assignments was not at issue, and the likely cost

and delays that permitting defendants' proposed amended answer would likely yield, the Court

denies defendants' motion.  *See Suro v. United States*, 107 F. Supp. 2d 206, 209 (E.D.N.Y. 2000)

(denying leave to amend where case had been pending for five years, discovery was nearly

complete, and the plaintiffs had notice of the new defendant they sought to add long before they

moved to amend).

### B.  Futility and Estoppel

     "[F]utility" under Rule 15 turns on whether a proposed pleading would be able to

withstand a dispositive pretrial motion.  *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339

(2d Cir. 2000) (Sotomayor, J.); *Touchtunes Music Corp. v. Rowe Int'l Corp.*, 847 F. Supp. 2d 606, 621 (S.D.N.Y. 2012) (citing *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006)).  Put differently, a proposed amendment is futile if the amended pleading fails to state a claim (or defense) upon which relief could be granted, and would thus not survive a motion to dismiss.  The Second Circuit has instructed that in the face of a summary judgment motion, "'when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law,' leave to amend should be denied."  *Borski v. Staten Island Rapid Transit*, 413 F. App'x 409, 411–12 (2d Cir. 2011) (quoting *Milanese v. Rust–Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001)).

Here, defendants seek to amend their Answer to assert a new affirmative defense in the face of an anticipated summary judgment motion from plaintiffs.  In support of their motion, however, defendants have not proffered any evidence tending to show that plaintiffs' titles are invalid.  They are merely reserving their rights to attempt to muster such evidence.  In contrast, the record already reflects evidence that plaintiffs' assignments were valid.  Accordingly, if the Court were to grant defendants' leave to amend their Answer, there is no non-speculative reason to believe that permitting plaintiffs' amendment would lead to a genuine issue of material fact as to plaintiffs' titles.

Independently, given defendants' conduct of this litigation, they are estopped from now attempting to inject a challenge to plaintiffs' assignment.  Notably, in their Rule 56.1 statement, plaintiffs stated that Themis and Des Moines were the "assignee[s] of all rights, title, interests, benefit, and obligations under the Credit Agreement" as to the claimed amounts of debt.  Dkt. 64 ("Pl. 56.1") ¶¶ 3–4.  In response, defendants averred that "Congo and the Central bank [*sic*] do

not dispute this statement." Def. 56.1 ¶¶ 3–4 (emphasis omitted).   To be sure, defendants are not bound by this concession in the same way they would if the concession were as to a matter of fact, as opposed to a legal conclusion:  Although "parties are bound by their concessions in Rule 56.1 Statements," *Cohan v. Movtady*, 751 F. Supp. 2d 436, 443 (E.D.N.Y. 2010) (citing *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009)), that is not so where a concession takes the form of a statement of law, not a statement of fact on which the Court can rely.  *See Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 45 (2d Cir. 2005).  But under the separate doctrine of judicial estoppel, defendants may be bound by their longstanding concession of the validity of the assignments. The doctrine of judicial estoppel "applies where a party both takes a position that is inconsistent with one taken in a prior proceeding, and has had that earlier position adopted by the tribunal to which it was advanced." *Stichting*, 407 F.3d at 45.  Because the Court, in its July 26, 2012 Opinion, adopted and expressly relied upon the parties' common view that plaintiffs' assignment was valid, even if the Answer were amended, defendants would not be permitted to assert otherwise at this late phase in the litigation.

In any event, the proposed amendment is futile on the merits.  Defendants have not offered any evidence, or specific reason, to doubt the validity of plaintiffs' assignment.  And plaintiffs, for their part, have mustered substantial evidence that they, not others, are the parties who can lay claim to defendants' conceded unpaid debts arising out of the Credit Agreement. Plaintiffs have produced the final deeds of assignment, dated August 5, 2008, as to Themis, and February 2, 2009, as to Des Moines.  Sherman Decl. Exs. A–B.  These deeds recite the former ownership of the debt, tracing the various transfers between banks from original banks under the Credit Agreement, to Red Barn Capital, LLC, and Main Street Capital, LLC, which, respectively,

11

assigned their interests to Themis and Des Moines.[2]  Defendants have articulated no reason, either in the proposed amended answer or in their memorandum of law, to doubt the facial validity of these deeds.  Plaintiffs have also produced a copy of defendant Central Bank's 2011 annual report and an English translation thereof.  In summarizing the Bank's debt to the "London Club," the report states that "the remaining principal on this debt is estimated at 28.6 million USD, 18.0 million of which is held by Themis and Des Moines."  Sherman Decl. Ex. E, at 2.[3]

In the face of this evidence—both from plaintiffs' contract and a defendants' own report—the Court concludes, comfortably, that an amendment of the Answer would be futile. Defendants' motion is denied for this additional reason.

_____

[2] Themis's claims derive from those originally held by Citibank N.A. ("Citibank") and Bayerische Vereinsbank International S.A. ("BVISA").  Citibank assigned its interests to Red Barn Capital, LLC ("Red Barn").  BVISA assigned its interests to ING Bank ("ING"), which in turn assigned them to Standard Bank plc ("Standard Bank"), which in turn assigned them to Red Barn. On August 5, 2008, Red Barn assigned to Themis the interests originally belonging to both Citibank and to BVISA.  Sherman Decl. Ex. A.

Des Moines's claims derive from those originally held by Citibank, Electro Banque, and ING Belgium (formerly Banque Bruxelles-Lambert S.A.).  Citibank, Electro Banque, and ING Belgium each transferred their interests to Standard Bank, which in turn transferred them to Main Street Capital, LLC ("Main Street").  On February 2, 2009, Main Street assigned to Des Moines the interests originally belonging to all three original banks.  Sherman Decl. Ex. B.

[3] In their brief, defendants also raise the issue of standing. Def. Br. 9–10.  Defendants are correct that plaintiffs must affirmatively establish that they have standing to bring this lawsuit.  *See Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 Civ. 0722 (PAE), 2012 WL 4849146, at *3–4 (S.D.N.Y. Oct. 12, 2012).  The evidence catalogued above appears to establish plaintiffs' standing.  Plaintiffs are reminded that in the event of a motion for summary judgment, they will bear the burden of establishing their standing.

## CONCLUSION

For the reasons stated above, the Court has denied defendants' motion for leave to amend their Answer.


SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge


Dated: April 18, 2013
      New York, New York

13