UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

THEMIS CAPITAL and DES MOINES INVESTMENTS LTD.,

                                   Plaintiffs,

                -v-

DEMOCRATIC REPUBLIC OF CONGO and CENTRAL
BANK OF DEMOCRATIC REPUBLIC OF CONGO,

                                   Defendants.

------------------------------------------------------------------X

09 Civ. 1652 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

       Plaintiffs Themis Capital and Des Moines Investments Ltd. seek attorneys' fees and costs

associated with the appeal and cross-appeal of the Court's July 9, 2014 Opinion and Order, Dkt.

213, *reported at Themis Capital, LLC v. Democratic Republic of Congo*, 35 F. Supp. 3d 457, 494

(S.D.N.Y. 2014) ("July 9, 2014 Decision"). There, the Court, following a bench trial, found

defendants Democratic Republic of Congo ("DRC") and the Central Bank of the Democratic

Republic of Congo ("the Central Bank") liable for nearly $70 million in damages in this breach-

of-contract action. For the following reasons, the Court grants plaintiffs' requested award,

subject to a modest reduction to account for staffing inefficiencies.

## I.    Background

       In the July 9, 2014 Decision, the Court held that plaintiffs were entitled to recover the

principal, interest, and compound interest on debt that had been restructured—pursuant to a

credit agreement—in 1980, and which had gone unpaid by defendants since 1990. But the Court

denied plaintiffs' request for a second category of compound interest—compound interest on the

compound interest, or what the Court called "second-generation" compound interest.  *See Themis*, 35 F. Supp. 3d at 491.

After the July 9, 2014 decision, the Court received briefing on the issue of attorneys' fees and costs.  On September 4, 2014, the Court substantially granted, with certain reductions and exclusions, plaintiffs' requested award.  Dkt. 224, *reported at Themis Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4379100 (S.D.N.Y. Sept. 4, 2014) ("September 4, 2014 Fee Decision").  The Court held that only defendant DRC—and not the Central Bank—was contractually responsible for paying such fees and costs.  *Id.* at *1; *see also Themis Capital v. Democratic Republic of Congo*, No. 09 Civ. 1652 (PAE), 2014 WL 4693680, at *4 (S.D.N.Y. Sept. 22, 2014) (denying reconsideration on this issue).  The Court reduced plaintiffs' award by, *inter alia*, excluding all time entries from all staff who billed less than 25 hours to the case; reducing the hours worked by most remaining timekeepers by 10% to account for staffing inefficiencies and occasional block billing; and reducing the hours worked of two timekeepers by 20% to account for more frequent block billing.  *Id.* at *6.

After the Court entered judgment for plaintiffs, Dkt. 237, defendants appealed and plaintiffs cross-appealed the denial of their claim for "second-generation" interest.  Dkts. 238, 240.  On September 24, 2015, after briefing, the parties argued their appeals before the Second Circuit.

On September 30, 2015, the Circuit issued a summary order ruling for plaintiffs on all issues, *i.e.*, affirming the decision below on all grounds challenged by defendants, but reversing as to the denial of second-generation interest.  *See* Dkt. 255, *reported at Themis Capital, LLC v. Democratic Republic of Congo*, No. 14 Civ. 4016, 2015 WL 5711815 (2d Cir. Sept. 30, 2015). On remand, this Court asked the parties to jointly calculate the amounts that should be added to

plaintiffs' recoveries in light of the Circuit's ruling, Dkt. 258, and resolved whether compound interest continued to accrue after the 2014 judgment, Dkt. 260. On November 2, 2015, the Court entered a revised judgment for more than $93 million between the two plaintiffs. Dkt. 261.

On November 13, 2015, plaintiffs moved for attorneys' fees and costs associated with the parties' appeals and post-appellate work, Dkt. 265, submitting a memorandum of law, Dkt. 266 ("Pl. Br."), and a declaration of Dennis H. Hranitzky, Dkt. 267 ("Hranitzky Decl."), and attached exhibits. On December 2, 2015, defendants submitted a response. Dkt. 269 ("Def. Br."). On December 9, 2015, plaintiffs submitted a reply. Dkt. 270 ("Pl. Reply").

## II.     Legal Standards Applicable to Attorneys' Fees Motions

Under New York law,[1] "a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *Metro Found. Contractors, Inc. v. Arch Ins. Co.*, 551 F. App'x 607, 610 (2d Cir. 2014) (summary order) (quoting *NetJets Aviation, Inc. v. LHC Comms., LLC*, 537 F.3d 168, 175 (2d Cir. 2008)) (internal quotation marks omitted). Thus, "when a contract provides that in the event of litigation the losing party will pay the attorneys' fees of the prevailing party, the court will order the losing party to pay whatever amounts have been expended by the prevailing party, so long as those amounts are not unreasonable." *Diamond D Enters. USA, Inc. v. Steinsvaag*, 979 F.2d 14, 19 (2d Cir. 1992) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1263 (2d Cir. 1987)) (internal quotation marks omitted).

The starting point for determining the presumptively reasonable fee award is "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Gaia House Mezz LLC v. State St. Bank & Trust Co.*, No. 11 Civ. 3186 (TPG), 2014 WL 3955178, at

---

[1] The credit agreement is governed by New York law.

*1 (S.D.N.Y. Aug. 13, 2014) (quoting *Millea v. Metro–North R.R. Co.*, 658 F.3d 154, 166 (2d

Cir. 2011)) (internal quotation marks omitted).  As to the reasonable hourly rate, the Court's

analysis is guided by the market rate "prevailing in the community for similar services by

lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson*, 465 U.S.

886, 895 n.11 (1984).  The relevant community is this District.  *Arbor Hill Concerned Citizens*

*Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 190–91 (2d Cir. 2008).

> The Court is also to consider, *inter alia*:
>
> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 493 F.3d 110, 114 n.3,

117–18 (2d Cir. 2007) (citing *Johnson v. Ga. Highway Exp., Inc*., 488 F.2d 714, 717–19 (5th Cir.

1974)), *amended on other grounds by* 522 F.3d 182 (2d Cir. 2008).  The Court "should also bear

in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the

case effectively."  *Id.* at 118.

"[T]he fee applicant . . . bear[s] the burden of documenting the hours reasonably spent by

counsel, and the reasonableness of the hourly rates claimed."  *Allende v. Unitech Design, Inc*.,

783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  To

that end, the fee application must be supported by contemporaneous time records that "specify,

for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. Ass'n for*

*Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

A claimant is only to be compensated for "hours reasonably expended on the litigation," and not for "hours that are excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 433–34 (1983).  If the number of hours stated is disproportionate to the work performed, the Court should reduce the stated hours accordingly.  *See Seitzman v. Sun Life Assurance Co. of Can.*, 311 F.3d 477, 487 (2d Cir. 2002).  Where it is difficult for the Court to make line-item reductions to adjust for excessive billing, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet Street, Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998)) (internal quotation marks omitted).  The Court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).

Finally, "[a]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks omitted).  As with fees, the requesting party must substantiate the request for costs. *See CJ Prods. LLC v. Your Store Online LLC*, No. 11 Civ. 9513 (GBD), 2012 WL 4714820, at *2 (S.D.N.Y. Oct. 3, 2012) (denying reimbursement for undocumented costs).  Court fees reflected on the Court's docket are sufficiently substantiated, as are costs for which a claimant provides extrinsic proof, such as invoices or receipts. *See Abel v. Town Sports Int'l LLC*, No. 09 Civ. 10388 (DF), 2012 WL 6720919, at *34 (S.D.N.Y. Dec. 16, 2012).  A sworn statement or declaration under penalty of perjury that certain amounts were expended on particular items is also sufficient. *Id.*

III.    **Discussion**

   A.    **Entitlement to Attorneys' Fees and Costs**

   In its September 4, 2014 Fee Decision, the Court held that plaintiffs are entitled to

reasonable attorneys' fees and costs because defendants are contractually obligated to pay "all

out-of-pocket expenses (including, without limitation, all counsel fees and court costs, stamp

taxes, duties and fees) incurred in connection with investigating any Event of Default or

enforcing this Agreement or suing for or collecting any overdue amount." *Themis*, 2014 WL

4379100, at *1 (quoting credit agreement).  It is not disputed that this entitlement extends to the

appeal.  Nor could it be:  Appellate fees are a form of "counsel fees."  And the Second Circuit

has construed a contractual provision requiring payment of attorneys' fees as encompassing

appellate fees in the absence of contrary contractual language.  *See Wifiland, LLP v. R.V.C., Inc.*,

564 F. App'x 612, 614 (2d Cir. 2014) (summary order).[2]  Such is the case here.  Plaintiffs are,

therefore, entitled to reasonable appellate fees and costs.

   B.    **The Lodestar**

   The Court begins by calculating the lodestar—the reasonable hours worked multiplied by

the reasonable hourly rates.  Plaintiffs request $445,930.00 in attorneys' fees for 589.40 hours of

work on the appeal and cross-appeal.  Hranitzky Decl., Ex. A.

---

[2] Although "[t]he Second Circuit sometimes recognizes the appropriateness of appellate attorneys' fees in particular cases" but did not speak to that point here, "nothing in the Appellate Rules of Civil Procedure requires the Second Circuit's judicial imprimatur before a district court may actually award such fees."  *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cty., Inc.*, No. 00 Civ. 7394 (ADS), 2013 WL 6388633, at *2 (E.D.N.Y. Dec. 5, 2013).

1.      **Hourly Rates**

In the September 4, 2014 Fee Decision, the Court approved hourly rates of $871.04 for

partner Dennis Hranitzky, $742.84 for counsel Debra O'Gorman, and $505.55 for associates.[3]

*Themis*, 2014 WL 4379100, at *7.  The Court reasoned that the case presented "difficult

questions of law and fact," that "the skill, time, and labor required was substantial," and that "the

experience, ability, and reputation of the attorneys were high."  *Id.*

For work done on the appeal, Hranitzky—a partner at Dechert LLP ("Dechert") with

more than 20 years' experience—charged his customary hourly rates of $955 (2014) and $1,000

(2015).  Hranitzky Decl. ¶¶ 18–19.  Second-chairing the appeal was Will Sachse—a Dechert

partner with about 16 years' experience—who charged his customary hourly rates of $795

(2014) and $830 (2015).  *Id.* ¶ 20.  O'Gorman—a Dechert counsel with more than 20 years'

experience—charged her customary hourly rates of $775 (2014) and $800 (2015).  *Id.* ¶ 21.

Three associates also worked on the appeal.  Kate O'Keeffe—an associate with about seven

years' experience—charged her customary hourly rates of $675 (fall 2014), $710 (spring 2015),

and $730 (fall 2015).  *Id.* ¶ 22.  Collin Hessney—who joined Dechert after graduation from law

school in 2013—charged his customary rates of $475 (fall 2014), $495 (spring 2015), and $550

(fall 2015).  *Id.* ¶ 23.  Lynne Kolodinsky—a first-year associate—charged her customary rate of

$435 (spring 2015).  *Id.* ¶ 24.

These rates are somewhat higher than those approved in the September 4, 2014 Fee

Decision.  And they are near—if not at—the top of the range that the Court could find

reasonable.  Nevertheless, the Court finds these rates, in this case, reasonable.  Besides the

factors cited in the September 4, 2014 Fee Decision—the difficulty of the issues; the skill, time,

---

[3] The latter rate reflected the average of the rates of 10 associates.

and labor required; and the experience, ability, and reputation of the attorneys—three additional

factors persuade the Court not to reduce the rates requested here.  First, defendants do not

challenge these rates.  Second, it is relevant, although not dispositive, that the rates sought were

actually paid by plaintiffs.  *See Therapy Products, Inc. v. Bissoon*, No. 07 Civ. 8696 (DLC)

(THK), 2010 WL 2404317, at *7 (S.D.N.Y. Mar. 31, 2010), *report and recommendation adopted*

*sub nom. Erchonia Corp. v. Bissoon*, 2010 WL 2541235 (S.D.N.Y. June 15, 2010); Hranitzky

Decl. ¶ 14.  Third, plaintiffs point to evidence that, at least in the top-end New York legal

market, hourly rates as high as $1,000 for partners have become common, *see* Hranitzky Decl.,

Ex. D, and that rates continue to rise, *see id.*, Ex. E.  Indeed, relying on similar evidence in the

September 4, 2014 Fee Decision, the Court observed that "billing rates substantially above those

charged here, including partner billing rates in excess of $1,000 an hour, are by now not

uncommon in the context of complex commercial litigation."  *Themis*, 2014 WL 4379100, at *7.

For these reasons, the Court will use the requested hourly rates to calculate the lodestar.

### 2.    Hours Worked

Plaintiffs seek fees based on a total of 589.4 hours spent by counsel on the appeal:  126.5

by Hranitzky, 301 by Sachse, 29.7 by O'Gorman, 66.8 by Hessney, 25.9 by O'Keeffe, and 39.5

by Kolodinsky.  Hranitzky Decl., Ex. A.  Consistent with the September 4, 2014 Fees Decision,

plaintiffs have excluded from this request hours billed by staff who spent less than 25 hours on

the appeal.  *Id.* ¶ 35(d).  Plaintiffs also excluded, *inter alia*, work on matters in progress, work on

peripheral and arguably redundant work, and the cost of meals and other miscellanea.  *Id.* ¶ 35.

In total, plaintiffs represent that they have excluded $382,270.05 in fees and $11,588.64 in

expenses incurred since August 2014 from their request.  *Id.* ¶ 36.  In light of this reduction,

plaintiffs argue that the 10% across-the-board reduction that the Court utilized in the September

4, 2014 Fee Decision to assure billing efficiencies is unwarranted here.  Pl. Br. 10.

The Court commends plaintiffs for this sensible pruning.  However, having carefully reviewed plaintiffs' time entries and other submissions, the Court has alerted to a significant inefficiency unaddressed and unexplained in plaintiffs' submissions.  Specifically, the majority of Dechert's work on the appeal was performed by Sachse, a high-billing-rate partner who appears not to have performed *any* work on the case prior to appeal.  *See* Dkt. 220, Ex. D. Dechert does not offer any explanation for why Hranitzky and O'Gorman, the partner and senior counsel long responsible for the case, and who handled the trial and the extensive briefing that both preceded and followed it, could not have taken on this role.  The factual and legal issues in the case were familiar to them.  Indeed, the appeal overwhelmingly consisted of defending the judgment they had won below, which required a mastery of the case's pretrial motions practice and the trial.  And the discrete issue presented by Dechert's cross-appeal, involving the scope of the compound interest to which plaintiffs were contractually entitled, was also one that Hranitzky and O'Gorman had briefed and argued below.

This Court is familiar, from its prior experience as a lawyer with an appellate practice, that an attorney tasked with taking on an appeal of a case on which he has not worked necessarily faces a significant learning curve.  The pretrial and trial record must be mastered, as must the relevant decisions below and the precedents apposite to them.  Such catch-up work is, perforce, unnecessary for existing lawyers on the case.  And where such staffing decisions appear to yield inefficiencies and are insufficiently explained and justified, courts "frequently apply across-the-board reductions to account for overstaffing."  *Guo v. Tommy's Sushi, Inc.*, No. 14 Civ. 3964 (PAE), 2016 WL 452319, at *6 (S.D.N.Y. Feb. 5, 2016) (collecting cases).

Here, plaintiffs have left unexplained the decision to bring on Sachse, rather than leaving the work of preparing the appellate briefs in the experienced hands of Hranitzky and O'Gorman.

Plaintiffs represent that Sachse's practice "focuses on complex commercial litigation, legal strategic guidance in complex and aggregated actions, and appellate advocacy," as well as "sovereign insolvency matters."  Hranitzky Decl. ¶ 20.  But the lawyers previously responsible for this case possess those skills, too—as this Court can attest.

And the appellate challenge here did not require specialized expertise uniquely possessed by Sachse among these Dechert senior lawyers.  It consisted primarily of defending the Court's verdict as to liability and most aspects of damages, which were amply if not comprehensively explained in the Court's various written decisions, and challenging the Court's construction of a contractual provision as it related to the discrete issue of second-generation compound interest.  While the Court has no doubt that Sachse was fully up to the challenge of ably and successfully handling appellate brief-writing, so, too, were Hranitzky and O'Gorman, experienced litigators whose preexisting knowledge placed them, from the moment a notice of appeal was filed, atop the learning curve.  And while conceivably Hranitzky and/or O'Gorman had other commitments at the time of appellate briefing whereas perhaps Sachse had more time available,[4] and while plaintiffs were apparently willing to absorb the cost of Sachse's learning the case record and the applicable precedents, these circumstances do not justify shifting to plaintiffs' adversaries the cost of Sachse's familiarizing himself with the case.

The Court therefore concludes that some reduction is merited to take account of the inefficiencies presented by the introduction of a new partner who needed to get up to speed on this complex and long-running international commercial case.  The decision to staff Sachse as lead brief-writer necessarily resulted in more hours being worked than if Dechert had deployed the senior lawyers heretofore responsible for the case.  In so holding, the Court does not, in the

---

[4] Hranitzky argued the appeal.

slightest, impugn the quality of the appellate work done by Sachse.  The Court has reviewed

Dechert's appellate briefs, which were of high quality.  And plaintiffs not only secured an

affirmance on the issues on which it had prevailed below, but a reversal as to this Court's denial

of second-generation compound interest.  That reversal added significantly to plaintiffs'

recoveries.

In the Court's considered judgment—based on its familiarity with the record, its review

of the time entries, and its experience with the appellate process—the inefficiencies presented

here warrant a 25% reduction in the hours worked by Sachse (from 301 to 225.75).  With this

reduction, the Court is confident that the resulting attorneys' fees are reasonable.  And this

reduction responds, too, to defendants' argument that spending "over 589 hours for researching,

briefing, conferring, preparing appendices, and arguing the issues is excessive."  Def. Br. 7.  The

Court is not persuaded that the hours worked by plaintiffs' counsel—once the reduction in the

hours claimed by Sachse is made—were excessive.  Dechert's unilateral write-downs before

requesting the instant fee award further counsel against a reduction by the Court beyond the 25%

reduction it makes to Sachse's hours.

In seeking what appears to be a yet larger haircut of plaintiffs' appellate fees, defendants

rely on three out-of-Circuit precedents that bear little resemblance to this case.  In *Maldonado v.

Houstoun*, 256 F.3d 181 (3d Cir. 2001), the Third Circuit expressed dismay at a request for more

than 550 hours claimed for a single appeal.  *Id.* at 186.  But *Maldonado* involved a "single

uncomplicated issue" implicating precedents that "were very well known to legal scholars and

those practicing public service law."  *Id.* at 185–86.  In *Hamprecht v. Hamprecht*, No. 12 Civ.

125, 2013 WL 1155675 (M.D. Fla. Mar. 14, 2013), the appeal was an emergency request for a

stay that was ultimately dismissed as moot, following "limited filings" with the appellate court,

less than a month after the notice of appeal was filed.  *Id.* at *1, 8.  Finally, in *Chalmers v. City of Los Angeles*, 796 F.2d 1205 (9th Cir. 1986), the issues on appeal were "not complex "and "involved matters intimately associated with the trial proceedings."  *Id.* at 1214; *cf. Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 369 F.3d 91, 97 (2d Cir. 2004) (doubting whether some 300 attorney hours were needed where "the entire argument section of the brief on this single-issue appeal occupied barely six pages").  By contrast, here, the appeal and cross-appeal implicated a controversy at which many tens of millions of dollars were at stake, and which raised, as the Court has previously noted, "complex issues of sovereign immunity and the actual or apparent authority of officials of a foreign government to sign debt acknowledgment letters."  *Themis*, 2014 WL 4379100, at *7.  Consistent with the complexity and importance of the appeal, plaintiff's opening appellate brief ran to 68 pages, including more than 40 pages devoted to argument.  *See* Corrected Brief and Supplemental Appendix for Plaintiffs-Appellees-Cross-Appellants, *Themis Capital v. Democratic Republic of Congo*, Nos. 14-4016, 14-4168, 2015 WL 1778489 (2d Cir. Apr. 9, 2015).[5]

Nor is the Court persuaded that, as defendants argue, plaintiffs' counsel spent excessive time—107.6 hours—preparing for argument.  *See* Def. Br. 8.  The appeal (and cross-appeal) were for high stakes, raised numerous factual and legal issues, and understandably required extended preparation, even by trial counsel.  Notably, in *Brady v. Wal-Mart Stores, Inc.*, No. 03 Civ. 3843 (JO), 2010 WL 4392566 (E.D.N.Y. Oct. 29, 2010), Judge Orenstein allowed plaintiffs in a disability discrimination action that had far lower monetary stakes—and, it would appear,

---

[5] Furthermore, defendants acknowledge that they raised three new arguments in their reply brief before the Second Circuit.  *See* Def. Br. 6 n.1.  While defendants argue that plaintiffs spent limited hours (defendants estimated 9.3) responding to these issues, *id.*, the fact the plaintiffs relegated their response to a single lengthy footnote did not free Dechert of the obligation to "understand and respond" to these issues.  Pl. Reply 3 n.4.

factual and legal complexity—than this one to claim 100 hours for preparing for oral argument before the Circuit.  *Id.* at *8.

For these reasons, the only adjustment that the Court makes to plaintiffs' fee request is to reduce by 75.25 the hours worked by Sachse, crediting him for 225.75 hours.  As Sachse billed a total of $236,806.50 for 301 hours worked—an average of $786.73 per hour, *see* Hranitzky Decl., Ex. A—the Court accordingly reduces plaintiffs' award by $59,201.43 (75.25 times $786.73).[6]  The Court accordingly grants $386,728.57 in attorneys' fees, rather than the $445,930.00 requested.

### C.    Costs

Plaintiffs also seek reimbursement of $18,811.29 in expenses incurred during the appeal, consisting of $3,393.54 for professional printing, $14,450.75 for legal research fees, and $967.00 for court fees.  Hranitzky Decl. ¶¶ 32–33.  These costs are of the sort that clients routinely pay for, and that courts routinely reimburse.  Defendants do not oppose reimbursement of these costs. And they are sufficiently documented through Hranitzky's sworn declaration.  *See Abel*, 2012 WL 6720919, at *34.  Therefore, the Court grants $18,811.29 in additional costs.

### CONCLUSION

For the foregoing reasons, the Court grants plaintiffs $386,728.57 in attorneys' fees and $18,811.29 in other costs, for a total of $405,539.86.  The Court respectfully directs the Clerk of Court to close the motion pending at docket 265.

---

[6] As plaintiffs argue in their reply brief, and as defendants do not contest, the 18 hours plaintiffs' counsel worked following remand to this Court—on, *inter alia*, considering how to calculate plaintiffs' additional recoveries—were reasonably expended and compensable.  *See* Pl. Reply 5.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 22, 2016
       New York, New York