# HOLWELL SHUSTER & GOLDBERG LLP

August 22, 2017

The Honorable Paul A. Engelmayer
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1305
New York, NY 10007

Re: *Themis Capital et al. v. Democratic Republic of Congo et al.*, No. 09 Civ. 1652

Dear Judge Engelmayer:

Pursuant to Local Civil Rule 37.2 and Rule 2.C of Your Honor's Individual Rules, we write on behalf of plaintiffs and judgment creditors in the above-referenced case to raise a discovery dispute. Briefly, we have served post-judgment discovery requests upon the Democratic Republic of the Congo and its central bank (collectively, "defendants") because the judgments this Court entered against them on November 2, 2015,[1] remain unsatisfied, but defendants have refused to provide *any* documents or information in response to those requests (other than a handful of documents of marginal relevance that were within the possession of their law firm). We have met and conferred with defendants' counsel in an attempt to resolve the matter, and now respectfully request that the Court enter an order compelling defendants to respond to our requests.

## Background

This Court entered money judgments against the DRC and its central bank on November 2, 2015, following a two-day trial, appeal and cross appeal, and upon finding that defendants had failed to repay the debts that formed the basis of the suit for nearly two decades. Plaintiffs' judgments remain unsatisfied. Meanwhile, public documents reveal that, although they will not pay plaintiffs, the DRC and its central bank have continued to make payments to other creditors, even though defendants agreed they would treat plaintiffs' debt *pari passu* with any debt owed to other creditors. *See NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 257–61 (2d Cir. 2012) (discussing how *pari passu* clauses prohibit sovereign debtors from prioritizing some payment obligations over others).

In view of the defendants' decision to leave plaintiffs' judgments unsatisfied, plaintiffs sought post-judgment discovery to assist in their efforts to collect upon their judgments. Plaintiffs thus sought information from certain financial intermediaries about transfers of money to and from the DRC in order to locate potential assets. Plaintiffs also served document requests and interrogatories upon defendants, seeking documents and information about (1) the nature, amount, and location of defendants' property interests, and (2) defendants' decision to pay the debt owed to certain of its creditors but not others, notwithstanding their *pari passu* obligations. *See* Ex. A hereto.

On June 16, 2017, with just a few days left on the 30-day deadline to respond to plaintiffs' requests, defendants contacted plaintiffs to request an extension. Defendants informed plaintiffs they had retained a consultant to travel to Kinshasa to interview relevant individuals, including ministers, and to obtain documents responsive to the plaintiffs' discovery requests. On that basis, plaintiffs

---

[1] The Court entered an additional judgment against the DRC for attorneys' fees and expenses on March 11, 2016.

agreed on June 21 to extend the time to respond to plaintiffs' discovery requests through July 21, 2017. Plaintiffs also requested that defendants' lawyers, who had represented the defendants in other cases brought by certain of the country's creditors, search the firm's files and produce any responsive, non-privileged documents in the firm's possession. Defendants' counsel agreed they would do so.

On July 18, 2017, just three days before the new deadline, defendants' counsel again contacted plaintiffs' counsel to provide "an update." In a meet-and-confer session that occurred the next day, defendants' counsel informed plaintiffs that the consultant had gone to Kinshasa and come back without any documents to produce, and further informed plaintiffs that defendants would not be responding to plaintiffs' interrogatories. Defendants' counsel did inform plaintiffs that the law firm would be providing certain documents from its files. At the same time, defendants requested a further extension of time. Because defendants' counsel conceded they had no concrete plan to respond substantively to plaintiffs' requests, plaintiffs did not agree to provide a further extension. Defendants served blanket objections on July 21 (*see* Ex. A), and then produced a handful of documents from the law firm's files (consisting mostly of publicly available filings from prior cases).

In the course of several meet-and-confer sessions that subsequently occurred, plaintiffs learned the following information (*see* Exs. B and C hereto):

- The consultant retained to assist in the collection of documents and information is Faida Mitifu, the DRC's former ambassador to the United States who served in that role for fifteen years. Dr. Mitifu travelled to Kinshasa from June 25 through July 14 and met with at least six high-ranking officials, including the Vice Prime Minister for Foreign Affairs & International Cooperation, the Minister in Charge of Portfolio, the State Minister in Charge of Justice, the Governor of the Central Bank, the Director of the Legal Department of the Central Bank, and the Deputy Chief of Staff and Advisor in Charge of International Litigation at the Justice Ministry.

- According to defendants' counsel, these officials were "offended" by the breadth of plaintiffs' discovery requests and Dr. Mitifu returned to the United States with no information to provide in response to plaintiffs' interrogatories and not a single document to produce.

- Plaintiffs were further informed that the DRC is not willing to make compliance with its discovery obligations in this case a point of focus anytime in the near future. Defendants' counsel stressed the civil and economic situation in the DRC.

- Before any documents could be produced to the plaintiffs, the country's Prime Minister, its Council of Ministers, and the country's head of state, President Joseph Kabila, would have to specifically approve of the production, and they have not approved any production to date.

This information makes it clear that the DRC is willfully violating its discovery obligations.

## Argument

A foreign state must provide discovery under the same procedures that govern private parties in civil suits, and the FSIA grants foreign states no special limitations or dispensation on post-judgment discovery. *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250 (2014); *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 589 F. App'x 16 (2d Cir. 2014) (summarily affirming discovery order against sovereign state). Thus, "discovery in aid of execution 'is the norm in federal and New York state courts,'" even when discovery is being sought against a foreign sovereign. *Exp.-Imp. Bank of Republic of China v. Grenada*, 768 F.3d 93 n.23 (2d Cir. 2014) (citation omitted).

Here, given the broad scope of permissible discovery in the post-judgment context, there is no doubt that plaintiffs' requests seek discoverable information. "New York law entitles judgment creditors to discover 'all matter relevant to the satisfaction of [a] judgment,' . . . permitting 'investigation [of] any person shown to have any light to shed on the subject of the judgment debtor's assets or their whereabouts.'" *NML*, 134 S. Ct. at 2254 (citations omitted). Plaintiffs' requests and interrogatories seek information about the nature, amount, and location of defendants' assets, as well as about defendants' payment of any amounts owed to other creditors (including any policy respecting defendants' decisions to pay certain debts but not others). These are plainly legitimate discovery requests. *Id.*; *see also FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 376, 380 (D.C. Cir. 2011) (upholding order of contempt against DRC for its failure to provide "information on any DRC assets valued over $10,000 and located outside the District of Columbia, both within the United States and in other countries where Hemisphere might seek to execute on its judgments").

Notwithstanding these clearly established rules of law, defendants have refused to provide any information or documents in response to plaintiffs' requests. This refusal should be seen in context: Defendants refused to pay the debts that formed the basis of these actions for more than two decades, and have continued to flout their obligations to plaintiffs since this Court entered judgments against defendants. Moreover, plaintiffs are not the only creditors whose rights defendants have been flouting; the DRC has been avoiding its obligations to other creditors for decades, and it subjected itself to a citation of contempt in D.C. federal court for failure to abide by discovery obligations in response to post-judgment requests served upon the DRC by another creditor. *FG Hemisphere*, 637 F.3d at 375. Defendants have plainly decided to employ the same strategy here; although they retained a consultant to travel to Kinshasa for the purpose of interviewing high-level individuals and collecting documents, the consultant returned empty handed with not a shred of information to produce. The consultant instead returned with the message that the relevant high-level Congolese officials were "offended" by the requests and would produce nothing unless the President of the DRC approved.

Nor have defendants interposed any objection that could excuse the default of their discovery obligations. Defendants generically objected that the discovery requests are overbroad, but that boilerplate objection is impermissible and does not justify the DRC's failure to provide any documents at all; it should be stricken. *Leibovitz v. City of New York*, 2017 WL 462515, at *2 (S.D.N.Y. Feb. 3, 2017) (striking generic objection); *Almonte v. Hines*, 2016 WL 6834015, at *3 (S.D.N.Y. Nov. 18, 2016) (requiring production over defendants' broad objection to interrogatory); *see also* Fed. R. Civ. P. 34(b)(2) (stating that objections to production requests *must* "state *with specificity* the grounds for objecting to the request, including the reasons" (emphasis added)). Similarly, although defendants objected that they should not be made to produce information about assets located outside the United States, the Supreme Court has specifically rejected the argument that the Foreign Sovereign Immunities Act would permit a foreign state to withhold information on that basis. *NML*, 134 S. Ct. at 2254 (information about foreign state's assets is discoverable even if not attachable by a U.S. court).

In sum, defendants have no legitimate basis to refuse to comply with their discovery obligations. The Court should compel defendants to provide documents and information responsive to plaintiffs' requests within 30 days, on pain of being held in contempt.

Respectfully submitted,

/s/  Vincent Levy
Vincent Levy