

August 25, 2017

Hon. Paul A. Engelmayer
Thurgood Marshall United States Courthouse
40 Foley Square, Courtroom 1305
New York, NY  10007

      Re:    No. 09 Civ. 1652, *Themis Capital v. DRC*

Dear Judge Engelmayer:

      We write in response to plaintiffs' August 22, 2017 Local Civil Rule 37.2, Individual Practice 2.C discovery dispute letter. Defendants are cognizant of the broad scope of permissible discovery in the post-judgment context generally. [1] However, plaintiffs' discovery requests—drafted as though the recipient were a First World financial institution—ignore that their respondents are located in a Third World country mired in political and humanitarian crisis.

      As a threshold matter, plaintiffs' references to "meet-and-confer sessions" are misnomers. Meet-and-confer sessions contemplate meaningful attempts to resolve a dispute, or at minimum determine the points of conflict. The parties' interactions to date have consisted of: (1) defendants initiating the contact, (2) defendants providing information to plaintiffs vis-à-vis a teleconference, and (3) plaintiffs reducing the communication to a self-serving writing to be used as an exhibit to a motion to compel. This is all a precursor to plaintiffs' real goal: sanctions against defendants that plaintiffs hope will result in execution unfettered by sovereign immunity.

      For example, plaintiffs have wholly declined defendants' invitation—*see* Ex. A hereto—to identify specific areas of focus for defendants' discovery efforts. Plaintiffs have declined despite defendants' assurance that doing so would be without prejudice to the scope of the discovery requests as drafted, which defendants have repeatedly challenged as overbroad and un-tempered by proportionality.

      Despite defendants' prior request for plaintiffs to identify "priority items" for defendants' discovery efforts, for the first time in their 2.C letter plaintiffs make a vague and unsupported reference to alleged preferential payments by defendants to other creditors. This reference: (1) undermines plaintiffs' previous assurance that they do not intend to "play gotcha" in this discovery process, and (2) confirms that plaintiffs have identified areas of focus for execution without the need for information or documents from defendants.

---

[1] However, discovery is not boundless, and a court may place limits on discovery demands in cases where the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. *See Vaigasi v. Solow Mgmt. Corp.*, No. 11CIV5088RMBHBP, 2016 WL 616386, at *17 (S.D.N.Y. Feb. 16, 2016).

On June 20, 2017, defendants informed plaintiffs that defendants had: (1) retained a consulting expert (later identified as Dr. Faida Mitifu), (2) conducted a series of meetings regarding plaintiffs' discovery requests, and (3) developed a strategy to obtain responsive information and documents from within DRC. Defendants further explained that the expert would travel to Kinshasa for meetings with government representatives, which were still in the process of being scheduled. In light of these efforts, defendants requested that plaintiffs agree to extend the response deadline. Defendants expressed that an extension as short as 30 days would likely be highly insufficient and asked that plaintiffs consider a 60-day extension. Defendants further offered unsolicited to provide plaintiffs with an interim status update the week of July 16, 2017.

Plaintiffs rejected defendants' request and would agree only to an extension from June 24 until July 21, 2017 (not even 30 days), while at the same time indicating that plaintiffs would later consider further extending that time and did not intend to "play gotcha" in discovery. Plaintiffs further emphasized that while they were interested in exploring the possibility of obtaining responsive information and documents, *they did not want to delay the process of seeking contempt findings against defendants*.

In light of the breadth of the discovery requests and plaintiffs' expressed intention not to "play gotcha," defendants asked plaintiffs to advise—prior to Dr. Mitifu's trip to Kinshasa—of any particular subjects of interest to the plaintiffs for purposes of focusing the expert's efforts while in Kinshasa. Plaintiffs declined.

On July 19, 2017, defendants advised that despite Dr. Mitifu's best efforts, defendants did not anticipate being able to provide information or documents from Kinshasa by July 21. Defendants further advised that while they would provide what interrogatory responses they could by July 21, they had been unable to identify a verification/declaration signatory. Defendants' counsel requested a further extension (in part due to ethical considerations, *see* doc. 278-2 at 3), which plaintiffs declined.

On August 2, 2017, defendants provided additional information, some of which is referenced in plaintiffs' 2.C letter. However, plaintiffs have omitted other information provided by defendants, including: (1) Dr. Mitifu attempted unsuccessfully to meet with the Minister of Finance during her trip; (2) the basement of the Ministry of Foreign Affairs had been flooded and many responsive documents had been lost; and (3) government representatives had indicated to Dr. Mitifu that plaintiffs' requests were so broad that defendants could not begin to try to put together meaningful responses, *i.e.*, they did not even know where to start. And while plaintiffs acknowledge that defendants advised of their approval process for production of information and documents, plaintiffs have nevertheless refused to meaningfully consider the reality of that process. Plaintiffs further failed to mention that Dr. Mitifu learned that an ad hoc committee has been formed to review the Central Bank's external debt litigation, including the instant dispute, and that in response to Dr. Mitifu's meeting, the Governor of the Central Bank has asked the ad hoc committee to expedite its review.

Defendants also explained that Dr. Mitifu had concluded that in light of the publicly documented current state of DRC—*e.g.*, wide-spread political and humanitarian crisis, extreme violence, fragile or non-existent state infrastructure in many parts of the country,

weak administrative capacity, and decreased state revenues to the point of not being able to pay civil servants and security forces—at this time plaintiffs' discovery requests would not receive high priority relative to defendants' more pressing concerns. Plaintiffs responded that they "do not believe the examples you provide relating to the state of affairs in the DRC excuse the defendants' default." *See* doc. 278-3 at 2.

On August 22, 2017, plaintiffs emailed defendants a "head's up" that plaintiffs would be seeking an order to compel from the Court. That same day, plaintiffs filed their 2.C letter.

Notably, plaintiffs do not dispute the overbreadth of their requests. Regardless, and by way of example only, plaintiffs' discovery requests are circumscribed by Instruction No. 4, which provides that each request "shall be construed as encompassing 'any and all.'" *See* Ex. B hereto. But "[b]lanket requests of this kind are plainly overbroad and impermissible."[2]

Moreover, the requests are objectionable not only because they target assets that are "beyond the jurisdictional reach of the court to which the request is made" (which the Supreme Court did not "need [to] take up" in *NML*), but also because, *inter alia*, the scope does not expressly exclude assets located within DRC. *See Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254 (2014) ("There was no point, for instance, in 'getting information about something that might lead to attachment in Argentina because that would be useless information,' since no Argentinian court would allow attachment.").

The Court should order the parties to meaningfully confer regarding defendants' objections, including overbreadth and proportionality.[3] Defendants further request that plaintiffs identify any target assets so that concerted efforts can be made to identify information and documents relating to such assets. Defendants request that the Court defer compelling defendants until such time as the committee formed to review the Central Bank's external debt litigation, including the instant dispute, has completed its review. Alternatively, defendants request that the Court defer compelling defendants until such time as the Accord de la Saint-Sylvestre is implemented which, in accordance with the Congolese Constitution and United Nations Security Council Resolution 2277, establishes guidelines and recommendations to organize a peaceful and timely transition of power through presidential, national and provincial legislative elections to be held by December 2017.

Respectfully,

*/s/ Jeremy C. Martin*

Jeremy C. Martin

---

[2] *Henry v. Morgan's Hotel Group, Inc.*, 15 Civ. 1789 (ER)(JLC), 2016 WL 303114 at *2 (S.D.N.Y. Jan. 25, 2016) (Cott, M.J.), citing, inter alia, *Gropper v. David Ellis Real Estate, L.P.*, 13 Civ. 2068 (ALC)(JCF), 2014 WL 518234 at *4 (S.D.N.Y. Feb. 10, 2014); *Badr v. Liberty Mutual Group, Inc.*, No. 3:06CV1208, 2007 WL 2904210 at *3 (D. Conn. Sept. 28, 2007) (finding request for "any and all" documents "overly broad"); *see also Pollard v. E.I. DuPont de Nemours & Co.*, No. 95–3010, 2004 WL 784489, at *5 (W.D. Tenn. Feb. 24, 2004) (holding "any and all" request ambiguous and overbroad).

[3] To date, there has been no meet-and-confer regarding defendants' objections. *See* Ex. C hereto.